**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Richard Donald LONEDOG,
Defendant–Appellant.**

No. 90–8040.

United States Court of Appeals,
Tenth Circuit.

April 2, 1991.

Daniel G. Blythe, Blythe & Lewis, Cheyenne, Wyo., for defendant-appellant.

Lisa E. Leschuck, Asst. U.S. Atty. (Richard A. Stacy, U.S. Atty., with her on the brief), D.Wyo., Cheyenne, Wyo., for plaintiff-appellee.

Before ANDERSON and EBEL, Circuit Judges, and SAFFELS,* District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

Richard Donald Lonedog was convicted of committing sexual abuse in Indian Country, in violation of 18 U.S.C. §§ 1153 and 2242(1). He appeals, contending that the district court erroneously limited his cross examination of the alleged victim, and that prosecutorial misconduct denied him a fair trial. We affirm.

The relevant facts are in dispute. Renata White alleges, and Lonedog denies, that Lonedog raped her on September 20, 1988. She and Lonedog agree that, while Lonedog was giving her a ride, they stopped at an abandoned house known as "The Farm." According to White, Lonedog stopped the car and forced her to go inside with him, where he raped her. According to Lonedog, White consented to engaging in intercourse there. Their respective stories differ dramatically, and the trial below centered on the credibility of White, Lonedog, and the witnesses called to corroborate their respective accounts.

## I.

Lonedog first contends that the district court improperly limited his cross-examina-

---

* Honorable Dale E. Saffels, Senior Judge, United States District Court for the District of Kansas, sitting by designation.

tion of White concerning her physical condition before and after the rape. Lonedog does not cite to, nor do we find, any such limitation in the record. To the contrary, the record reveals considerable cross-examination of White concerning her physical condition both before and after the rape. R.Vol. VII at 231–68.

Lonedog does cite to the district court's exclusion of testimony offered to impeach White's credibility. R.Vol. VII at 430–34. He apparently alleges that exclusion of the testimony denied him his right to confrontation. In support of this proposition he cites *United States v. Atwell*, 766 F.2d 416 (10th Cir.), *cert. denied*, 474 U.S. 921, 106 S.Ct. 251, 88 L.Ed.2d 259 (1985) and *United States v. Valentine*, 706 F.2d 282 (10th Cir.1983). These cases stand for the proposition that the defendant's right to confrontation may be violated if the trial court precludes an entire relevant area of cross-examination. However, as we have already stated, the excluded evidence was another witness's testimony, not the cross-examination of White. Moreover, the record reveals that the district court excluded the proffered testimony because it was irrelevant.

■ "In reviewing the evidentiary rulings of a trial court, we may not reverse in the absence of an abuse of discretion." *United States v. Alexander*, 849 F.2d 1293, 1301 (10th Cir.1988) (citing *United States v. Rodriguez–Pando*, 841 F.2d 1014, 1018 (10th Cir.1988)). Lonedog's offer of proof indicated that the testimony would show White was beaten by her boyfriend 24 hours after the alleged rape. The government argued such evidence was irrelevant to whether Lonedog raped White. In response, Lonedog suggested, and now alleges on appeal, that the jury could infer from the fact of the beating that White's boyfriend had beaten her because she had engaged in consensual intercourse with Lonedog. He further suggested that the beating established motivation for White to untruthfully characterize the incident as a rape in order to avoid further physical abuse from her boyfriend.

We disagree. Evidence that White's boyfriend beat her is in no way relevant to the issue of whether she consented to intercourse with Lonedog. As for the alleged motive to lie, by the time the beating supposedly occurred, White had already told her friends, law enforcement officers, and medical personnel that she had been raped. We cannot say that the trial court abused its discretion in refusing to admit this irrelevant and potentially prejudicial testimony into evidence.

## II.

■ The remainder of Lonedog's arguments on appeal are essentially allegations of prosecutorial misconduct. He asserts that certain questions posed by the prosecutor in her examination of various witnesses were improper and constitute reversible error. In order to preserve alleged error for appeal, however, a party must make a timely and proper objection. *United States v. Taylor*, 800 F.2d 1012, 1017 (10th Cir.1986), *cert. denied*, 484 U.S. 838, 108 S.Ct. 123, 98 L.Ed.2d 81 (1987). If the party fails to object, we will only reverse for plain error. *Id.* "Plain error is *'fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done.'" *United States v. Henning*, 906 F.2d 1392, 1397 (10th Cir.1990) (quoting *United States v. Coppola*, 486 F.2d 882, 884 (10th Cir.1973), *cert. denied*, 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974)) (emphasis in original), *cert. denied*, —— U.S. ——, 111 S.Ct. 789, 112 L.Ed.2d 852 (1991). Thus, we first consider the questions to which Lonedog failed to object, and review them for plain error.

■ Lonedog contends that he was denied a fair trial and due process of law when the prosecutor, on cross-examination, asked whether he was incarcerated. R.Vol. VIII at 556. For support, Lonedog cites *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126, *reh'g denied*, 426 U.S. 954, 96 S.Ct. 3182, 49 L.Ed.2d 1194 (1976), in which the Supreme Court held that a defendant may not be compelled to stand trial in his prison clothing. Lone-

dog's situation is very different. First, the *Estelle* Court's holding was based on the "continuing [prejudicial] influence throughout the trial," *id.* at 505, 96 S.Ct. at 1693, that a defendant's prison clothing could have on the jury. The prosecutor's question in this case was an isolated, not a "continuing," occurrence. Second, the prosecutor posed the objectionable question only moments before properly eliciting from Lonedog the fact that he had been convicted of a felony several years earlier. Any prejudice to Lonedog was limited by the jury learning the basis for his incarceration. Third, even if we apply *Estelle*'s principle to the prosecutor's question, the *Estelle* Court held that any claim of constitutional error is waived by the defendant's failure to object. *Id.* at 512–13, 96 S.Ct. at 1696–97. Lonedog did not object to the question regarding his incarceration. We hold that it did not constitute plain error.

■ Lonedog also challenges the questions posed in the following exchange between the prosecutor and defense witness Lucy Moss, Lonedog's ex-wife, regarding Moss's relationship with Lonedog:

Q: [BY MS. LESCHUCK] And aren't you afraid of him?

A: [MOSS] No.

Q: You're not afraid of him? Were you afraid of him at one time?

A: At one time I was.

Q: When was that?

A: That was when he hit me with a flashlight.

Q: Do you remember testifying in front of the grand jury?

A: Yes, I do.

Q: Do you remember telling the grand jurors why you were scared of him?

A: Because he hit me with a flashlight.

R.Vol. VIII at 472–73.

Lonedog asserts that the question eliciting this testimony was "directly in violation of the Order in Limine and the prosecutor's assurances (Motion Hearing, Vol. X, pp. 7 and 10–12, 14–15 and again in the Trial Transcript, Vol. II, at page 275–276)." The order to which he refers, however, governed the prosecution's attempts to elicit Georgianne Shamblem's testimony that she had been raped by Lonedog. In no way does the cited record address the prosecution's cross-examination of Lucy Moss. When that issue was addressed, the prosecution informed the court and Lonedog of its intention to use Moss's grand jury testimony if the defense called her as a witness. R.Vol. X at 39. More importantly, the court specifically ruled that the grand jury testimony could be "spread upon the record" if Moss were called. *Id.* at 41–42. Thus, the questions were proper to establish the possibility that Moss's fear of Lonedog tainted her testimony on his behalf. Moreover, any possible prejudice was mitigated by the following cautionary instruction:

I'd caution you ladies and gentlemen, with regard to this matter of whether or not Mr. Lonedog hit his ex-wife at any time. It should not be considered by you in determining whether or not the charges against Mr. Lonedog here have any substance.

R.Vol. VIII at 480. We hold that the exchange regarding the flashlight did not constitute plain error.

■ Lonedog also challenges the following questioning concerning his relationship with Lucy Moss:

Q: [BY MS. LESCHUCK] How would you characterize your relationship with her while you were in Denver?

A: [LONEDOG] Well, it's like this. We were putting up with each other because of the fact of our son, you know, to be perfectly honest.

Q: And isn't it true she wrote a letter to Social Services complaining about you?

A: I have no knowledge of that, no.

R.Vol. VIII at 531.

Lonedog contends that the latter question impermissibly introduces evidence of a prior bad act. We disagree. The question regards an act of Lucy Moss. Although the question may have been objectionable as irrelevant or calling for speculation, Lonedog did not object to it at all, let alone as constituting impermissible evidence of a prior bad act. This vague reference to Lonedog does not come close to creating

the sort of fundamental injustice that constitutes plain error.

### III.

■ We next turn to the claims that Lonedog preserved by properly objecting. Reviewing such claims of prosecutorial misconduct entails a two-step analysis. We must first determine whether the conduct was, in fact, improper. *United States v. Martinez–Nava,* 838 F.2d 411, 416 (10th Cir.1988). If the conduct was improper, we must then determine whether it warrants reversal. *Id.* Prosecutorial misconduct does not warrant reversal if it was harmless error. *United States v. Alexander,* 849 F.2d 1293, 1296 (10th Cir.1988); *United States v. Taylor,* 800 F.2d 1012, 1018 (10th Cir.1986), *cert. denied,* 484 U.S. 838, 108 S.Ct. 123, 98 L.Ed.2d 81 (1987).

"The Supreme Court has articulated different harmless-error standards, depending upon whether the error is of constitutional dimension. A non-constitutional error is harmless unless it had a 'substantial influence' on the outcome or leaves one in 'grave doubt' as to whether it had such effect." *United States v. Rivera,* 900 F.2d 1462, 1469 (10th Cir.1990) (en banc) (quoting *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)). *See also* Fed.R.Crim.P. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."). On the other hand, most constitutional errors may be declared harmless only if we are convinced, beyond a reasonable doubt, that they did not affect the outcome of the trial.[1] *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, *reh'g denied,* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967); *United States v. Hasting,* 461 U.S. 499, 510–11, 103 S.Ct. 1974, 1981–82, 76 L.Ed.2d 96 (1983); *United States v. Rivera,* 900 F.2d at 1470.

In determining whether the misconduct affected the outcome, we consider: "the curative acts of the district court, the ex-

tent of the misconduct, and the role of the misconduct within the case as a whole." *United States v. Martinez–Nava,* 838 F.2d at 416.

### A.

Lonedog asserts that reversible error was committed when the prosecutor, on cross-examination, asked defense witness Lucy Moss whether she remembered filing a rape charge against Lonedog. The question was posed in the context of the following exchange:

Q: (BY MS. LESCHUCK) [Prosecutor] Did you ever file complaints against your ex-husband?

MR. MCNIFF [Defense Attorney]: Your Honor, I don't think that any of this has any relevance to what we're doing here today.

MS. LESCHUCK: I believe that it does, Your Honor. It goes to show the motive of this witness to testify as she is testifying today.

THE COURT: For that limited purpose, I'll allow you to go on briefly.

Q: (BY MS. LESCHUCK): Did you file any complaints against your husband ever?

A: [MOSS] Yeah, I did.

Q: Did you follow through with those complaints?

A: No.

Q: Why not?

A: There was really no reason to. I was mad at the time when he hit me.

Q: What kind of complaints did you file?

A: When he hit me with the flashlight.

Q: Any other time?

A: No.

Q: Do you remember in March 1988 filing a rape charge against your husband, ex-husband?

MR. MCNIFF: Your Honor, I object.

MS. LESCHUCK: Your Honor, it's proper impeachment.

---

1. A narrow category of constitutional errors can never be dismissed as harmless. *United States v. Rivera,* 900 F.2d at 1470 (citing *Rose v. Clark,* 478 U.S. 570, 577–78, 106 S.Ct. 3101, 3105–06, 92 L.Ed.2d 460 (1986)).

MR. MCNIFF: This is way beyond the scope of what the witness talked about.

MS. LESCHUCK: She just testified she had not filed any other charges against her husband.

THE COURT: The question is how far do we wish to go into this matter at this time, and I suspect at this point that and would rule that the prejudice is being generated in terms of the minds of the jury in terms of their understanding of these particular charges may be outweighing the value of the impeachment and would sustain the objection.

MS. LESCHUCK: Can I at least get an answer to that last question, Your Honor?

THE COURT: Why don't you move on to the next question.

Q: (BY MS. LESCHUCK) Did you ever follow through with any of your complaints?

A: No.

Q: And why not?

A: I told you. I had no reason to. I was mad at the time when I did it and I got over it and there was really no evidence or anything to show cause why I signed a complaint.

R.Vol. VIII at 480–82.

■ Lonedog argues that the question to Moss about filing the rape complaint violated a pre-trial order in limine. The relevant record, however, is unclear in this regard. The court plainly forbade the prosecution from eliciting Georgianne Shamblem's (another defense witness) testimony that she had previously been raped by Lonedog. R.Vol. X at 37–38. While the court may have intended the same prohibition with regard to Lucy Moss, *id.* at 39, no such clear judicial expression exists in the pre-trial record. Nor did the court indicate during either the trial or post-trial motion proceedings that it considered the question violative of any pre-trial order.

Given the ambiguity in the pre-trial proceeding, it was not unreasonable for the prosecutor to conclude that she could properly elicit the testimony in order to impeach Moss's false statement that she had not filed any other charges against her husband. In fact, during the sidebar that immediately preceded the above-cited exchange, the court had indicated that properly impeaching testimony would be admitted into evidence. R.Vol. VIII at 476–78. As a result, we do not think that the question constituted prosecutorial misconduct.

■ However, even if we concluded that it did, it would not warrant reversal of Lonedog's conviction. Since the error was not of constitutional magnitude,[2] it requires reversal only if it "had a 'substantial influence' on the outcome or le[ft us] in 'grave doubt' as to whether it had such effect." *United States v. Rivera,* 900 F.2d at 1469. Such is not the case.

Lonedog's objection was sustained and the question was never answered. Lonedog did not move for a mistrial. He did not even request a curative instruction. The court nevertheless cautioned the jury at the close of Moss's cross-examination that Moss's references to Lonedog's prior conduct could not be considered as evidence against him. R.Vol. VIII at 507–08. The jury was again instructed, as part of its general charge, as follows:

Evidence of other crimes or wrongs or acts are not to be considered by you as evidence of the defendant's character or that he possessed a particular character trait and acted in conformity with it. In other words, it would be improper for a jury to convict an accused because the jury believes at some other time or place the defendant committed a crime or

2. If the district court had clearly ruled as Lonedog suggests, the court's decision would only reflect its discretionary approximation of the appropriate balancing between probative value and prejudice under Fed.R.Evid. 403. Such a ruling would not represent protection of a constitutionally guaranteed right to have the testimony excluded. Indeed, we think the court properly could have allowed the prosecution to elicit testimony concerning the rape charge as highly probative of Moss's bias in testifying for Lonedog. *United States v. Abel,* 469 U.S. 45, 51–54, 105 S.Ct. 465, 468–70, 83 L.Ed.2d 450 (1984) (holding that: a witness's fear of a party is evidence of bias; a witness's bias is highly probative of her credibility; and this high probative value may outweigh corresponding prejudice).

wrongful act, which has not been charged in the Indictment.

Instruction No. 27, R.Vol. I at Tab 119.

We find no reason to believe that the jury did not follow these instructions. The question concerning the rape charge does not warrant reversal of Lonedog's conviction.

### B.

Lonedog also contends that he was denied a fair trial when the prosecutor, in impeaching Moss with her grand jury testimony, read a portion of Moss's testimony discussing the fact that Lonedog had been in prison. R.Vol. VIII at 473.

█ We agree with the district court that the reference to prison was "unnecessary" to impeach and was improper. *Id.* at 476. We also concur with the district court's holding that any prejudice created by the prosecutor's misconduct was not irreparable. *Id.* As discussed above, Lonedog later testified that he had a previous felony conviction for interstate transportation of firearms. R.Vol. VIII at 557. In addition, the court gave the following curative instruction:

Ladies and gentlemen, the cross-examination portion of a grand jury transcript was read to you or read really to the witness here for the limited purpose of attempting to impeach testimony that was given in open court by this witness and I don't believe was being offered for any substantive purposes. In other words, for the truth of what was in the grand jury transcript.

Nevertheless, the counsel for the government brought up before you a question by the prosecutor before the grand jury that reflected a leading question to which the witness who testified before the grand jury reflected that individual's belief or understanding that Mr. Lonedog had previously been in prison. I need to caution you with regard to that information.

It should not be considered by you in making your deliberations on the facts of this case. You are to decide the case based upon the evidence and the testimony surrounding this charge, not on whether or not Mr. Lonedog was ever in prison. And it would be in violation of your oath to make a decision based upon that information.

*Id.* The court further instructed the jury at the close of the prosecutor's cross-examination of Lucy Moss:

Ladies and gentlemen, again I would caution you that all references that have been made to the grand jury testimony of this witness have been referred to only for the purpose of shedding light upon her testimony here and any reference of conduct by the defendant or accused in this matter should be—this may not be considered as evidence against him.

R.Vol. VIII at 507–08. The trial court also included the following instruction as part of the general charge to the jury: "Evidence of a defendant's previous conviction of a crime is to be considered by you only insofar as it may affect the credibility of the defendant as a witness, and must never be considered as evidence of guilt of the crime for which defendant is on trial." Instruction No. 27, R.Vol. I at Tab 119.

Lonedog contends on appeal that these numerous curative instructions were ineffective because they did not specifically link the prosecutor's reference to prison with Lonedog's testimony concerning his prior conviction. We disagree. The jurors were explicitly cautioned against considering evidence of other wrongs or crimes in weighing Lonedog's guilt in connection with the rape charge. There is no reason to believe they disregarded this instruction. We hold that the error was harmless.

### C.

█ Finally, Lonedog asserts that he was denied a fair trial when the prosecutor improperly introduced evidence of prior bad acts against him. Lonedog challenges the following question:

Q: Well, is this the same Bruce Means that you pointed a gun at at one point in time?

MR. MCNIFF: Your Honor, we're way afield now. Bruce Means isn't here. He didn't testify.

THE COURT: Sustained.

R.Vol. VIII at 549.

While we agree the question was neither appropriate nor relevant, we do not think that it affected the outcome of the trial. The court sustained the objection and the question was not answered. Moreover, as quoted above, the jury was properly instructed not to consider such extraneous bad acts in their decision concerning the rape.

 Lonedog also challenges the following questioning of Frances Blackburn, the officer of the Bureau of Indian Affairs that investigated Renata White's rape:

BY MS. LESCHUCK:

Q: Ms. Blackburn, you stated you knew the defendant, Mr. Lonedog?

A: Yes.

Q: Do you know if he has a reputation up on the reservation?

A: Yes, I do.

MR. MCNIFF: Objection, Your Honor. I didn't hear the question.

Q: (BY MS. LESCHUCK) Do you know whether or not Mr. Lonedog has a reputation on the reservation?

MR. MCNIFF: I object to the question.

MS. LESCHUCK: He's opened the door, Your Honor.

THE COURT: To what? Your question—

MS. LESCHUCK: To whether or not she knew Mr. Lonedog. She said she has known him for 12 or 15 years.

THE COURT: I don't even know what reputation you're asking for or how it applies. I don't think he put it in issue at this point.

MS. LESCHUCK: All right.

Q: (BY MS. LESCHUCK) Ms. Blackburn, you stated on cross and direct that—

THE COURT: Ladies and gentlemen, I don't want to confuse you by that series of comments that went on between counsel and myself. People are not convicted of crimes of course in the United States

on the basis of reputation and that is not in issue. Later on in this trial, certain things may become in issue concerning reputation; for example, the reputation of a witness to speak truthfully in their community may be very significant in the case, but the general reputation is not considered.

R.Vol. VII at 320–21.

We fail to see how this testimony introduces any prior misconduct of Lonedog. The objectionable question solicited reputation testimony, but was never answered. Nothing indicated the nature of Lonedog's reputation. Moreover, the court's instruction cured any possible prejudice.

## IV.

 Finally, Lonedog asserts that even if no single error, considered in isolation, affected the outcome of his trial, the cumulative effect of the errors warrants reversal of his conviction. While "[t]he cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error," *United States v. Rivera*, 900 F.2d at 1469, we do not think that the prosecutor's errors, when considered together, warrant reversal of Lonedog's conviction.

"The district court, having observed the entire trial, was able to determine first hand whether there was 'reason to believe ... [that the prosecutor's actions] ... influenced the jury's verdict.'" *United States v. Alexander*, 849 F.2d at 1297 (quoting *United States v. Martinez–Nava*, 838 F.2d at 416). In rejecting Lonedog's motion to set aside the jury's verdict, the district court concluded that any improper testimony had not affected the outcome. R.Vol. XI at 10–14. After careful review of the record, we, too, are satisfied that the errors were effectively cured and that the jury possessed ample evidence to convict.

This does not mean that we condone the often unprofessional behavior of the prosecution. We echo the words of the Eighth Circuit and "admonish the Assistant United States Attorney that [s]he must not allow her 'zeal to out run discretion.'" *United States v. Hernandez*, 779 F.2d 456, 460

(8th Cir.1985) (quoting *United States v. Killian*, 524 F.2d 1268 (5th Cir.1975), *cert. denied*, 425 U.S. 935, 96 S.Ct. 1667, 48 L.Ed.2d 177 (1976)).

However, neither Lonedog nor any other accused citizen is entitled to "an error free, perfect trial." *United States v. Alexander*, 849 F.2d at 1301 (quoting *United States v. Hasting*, 461 U.S. at 509, 103 S.Ct. at 1981). "The Constitution entitles a criminal defendant to a fair trial, not a perfect one." *United States v. Rivera*, 900 F.2d at 1469 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986)). When the prosecutor exceeded her bounds, the court sustained Lonedog's objections and instructed the jury accordingly—typically, immediately after the improper question. "The assumption that juries can and will follow the instructions they are given is fundamental to our system of justice." *United States v. Cardall*, 885 F.2d 656, 668 (10th Cir.1989). As a result, we cannot say it is likely that any acts of prosecutorial misconduct, considered either individually or cumulatively, affected the outcome of Lonedog's trial.

Accordingly, we AFFIRM.