974 F.2d 1346
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
John Joseph O'BRIEN, Defendant-Appellant.
 No. 91-3212.
 United States Court of Appeals, Tenth Circuit.
 Aug. 28, 1992.
 
 Before McKAY, Chief Judge, BARRETT, Circuit Judge, and BRIMMER, District Judge*.
 ORDER AND JUDGMENT**
 CLARENCE A. BRIMMER, District Judge.
 Appellant John Joseph O'Brien was indicted on five counts of making and using a material false writing in violation of 18 U.S.C. § 1001. The indictment charged that O'Brien, in completing various documents in conjunction with his employment at the U.S. Penitentiary in Leavenworth, Kansas, failed to disclose he had been fired from employment with the State of Missouri Department of Social Services, Division of Youth Services. A jury found O'Brien guilty on counts one, two, and four, and not guilty on count five.[1] The trial court entered a judgment of acquittal on the third count.[2]
 Appellant worked for the Missouri Division of Youth Services from on or about August 22, 1986 until on or about November 10, 1986. In his position as a youth specialist, he supervised and provided rudimentary counseling to female children aged twelve to seventeen who had been committed to the agency as status offenders or for other reasons, including delinquency. Appellant's immediate supervisor, John Robertson, recommended on October 30, 1986 that O'Brien be fired due to allegations of unprofessional conduct with the children. On or about November 10, 1986, appellant was dismissed from his employment. He maintains he was not fired from his position.
 Subsequently, appellant applied for a position at the United States Penitentiary at Leavenworth, Kansas. He was given an integrity interview on December 10, 1987 by Jacqueline Fullove, Personnel Officer. That interview consisted of a question and answer session wherein appellant was asked about his past in order to determine his suitability for government employment. During the interview, Ms. Fullove inquired about appellant's work history, and asked if he had ever been dismissed for cause from a job. He answered in the negative. Furthermore, she asked if he had ever been involved in any serious misconduct in former or current employment in the prior five years. Again, he answered in the negative. At the conclusion of the interview, appellant reviewed and signed the document Ms. Fullove had prepared.
 On his S.F. 171 Employment Application for the penitentiary, appellant failed to mention his period of employment with the Missouri Division of Youth Services. He indicated continuous employment from August to November 1986 at Joseph Bold, Certified Public Accountants, in Kansas City, Missouri. Appellant further indicated he had never been fired from a job. He signed the S.F. 171 form on July 22, 1987.
 In addition, appellant prepared and signed a Standard Form 86, Questionnaire for Sensitive Position, on September 22, 1988. On that form, he attested to his continuous employment with Joseph Bold, CPA, between August and November of 1986. Moreover, appellant indicated he had not quit, been fired, or left any employment by mutual agreement within the prior fifteen years.
 The United States Penitentiary at Leavenworth, Kansas employed appellant as a correctional officer from 1988 until 1990. That position required a thorough background check. Although appellant began his employment in 1988, the requisite background investigation had not been completed. Cynthia Perez, Supervisory Investigator with the United States Office of Personnel Management, interviewed appellant twice in August of 1989 for purposes of that background investigation. During his conversations with Ms. Perez, appellant admitted his omission of the State of Missouri employment from the pertinent documents, and declared he voluntarily left that position.
 During his employment at Leavenworth, but prior to the United States' indictment of appellant on charges of falsifying documents, the penitentiary suspended appellant because he was charged by the State of Missouri with possession of stolen property. As a union member, appellant's suspension was taken by the union to arbitration. The arbitrator ruled in favor of the penitentiary. After the arbitrator's decision, the state charges against O'Brien were dismissed. Before the union could ask the arbitrator to reconsider his decision in light of the dismissal of charges, the United States Department of Justice indicted O'Brien under falsification of documents charges.
 
 
 1
 The union entered its grievance asking for review of the stolen property issue, and the arbitration hearing on that matter was scheduled in April, 1991. During the pendency of the second arbitration hearing, the falsification of documents case proceeded in federal court. Appellant filed a motion to dismiss, contending he was selectively prosecuted on the falsification of documents charges because he utilized the union grievance procedure against the United States Penitentiary.
 
 
 2
 After a hearing on January 14, 1991, the district court ruled that appellant failed to demonstrate evidence of selective prosecution. Accordingly, the court granted the United States' motion in limine to exclude evidence of O'Brien's pursual of a union grievance. Furthermore, the court quashed O'Brien's subpoenas because the individuals to be summoned would have testified concerning issues relating to the union grievance. Finally, the court granted O'Brien's motion in limine concerning any allegations of sexual misconduct at his job with the State of Missouri, or any evidence of the stolen property charges. The ensuing jury trial resulted in a guilty verdict on three counts of falsifying documents. Appellant was placed on probation for one year, and ordered to pay a fine of $1,000.
 
 
 3
 Appellant contends that (1) the district court erred in overruling his motion to dismiss based on selective prosecution; (2) the court erred in granting the government's motions in limine, and in quashing defense subpoenas; (3) prosecutorial misconduct resulted from cross-examination in an area the court had ruled could not be delved into; and (4) the evidence adduced at trial did not support the verdict.
 
 
 4
 We affirm.
 
 
 5
 I. Denial of appellant's motion to dismiss for selective prosecution.
 
 
 6
 Selective prosecution is an issue of law to be determined by the court. United States v. Washington, 705 F.2d 489, 495 (D.C.1983). A selective prosecution claim, when judged according to ordinary equal protection standards, requires a showing that a passive enforcement policy exists, the policy has a discriminatory effect, and it is motivated by a discriminatory purpose. Who'd v. United States, 470 U.S. 598, 608 (1985); see also United States v. Cook, 949 F.2d 289, 292 (10th Cir.1991). While we do not rule on the issue of whether a passive enforcement policy actually existed, we will assume ad arguendo that the passive enforcement policy alleged in the instant case was the government's "bringing to light" any employees who had falsified information on employment forms.
 
 
 7
 The chronology of events began when appellant filed his pretrial motion to dismiss for selective prosecution, alleging that he had been prosecuted for exercising his First Amendment rights of freedom of speech and association and for exercising his statutory right to union arbitration, and that his Equal Protection rights had been violated. At a motion hearing held on January 14, 1991, Larry Scott Raney, a cook foreman and vice-president for the union at the U.S. Penitentiary in Leavenworth, testified that he had personal knowledge of "three or four different cases where people have been called in and asked to clarify things in their background investigation." (R.O.A. Vol. II at 49). To Raney's knowledge, those cases did not involve criminal allegations or conduct. (R.O.A. Vol. II at 55). This testimony was the only evidence presented at the hearing concerning similarly situated individuals.
 
 
 8
 At the request of the District Court, both parties briefed the question of First Amendment and equal protection rights as pertaining to union representation. After considering those briefs and the testimony and argument at the motion hearing, the court entered an order overruling and denying O'Brien's motion, basing its opinion on the Equal Protection argument. The court properly denied the motion to dismiss because O'Brien failed to present admissible evidence on the issue of other instances involving falsification of employment records.
 
 
 9
 Appellant subsequently submitted an affidavit purporting to present such evidence. (R.O.A. Volume I at Tab 22). The affiant, defense counsel Marilyn Trubey, declared that Len Peterson, who had been hired as a correctional officer at the United States Penitentiary, had falsified employment documents. Peterson had been required to sign the identical forms as had appellant, and did not reveal the fact that he had been previously employed and subsequently terminated by the Pinkerton agency. The background investigation conducted by the Federal Bureau of Investigation revealed that prior employment with Pinkerton. As a result of the FBI's investigation, Peterson was required to submit a memorandum to the Penitentiary administration at Leavenworth regarding the employment with Pinkerton. Peterson was not prosecuted for making false statements on employment documents, nor was there any disciplinary action taken against him.
 
 
 10
 Accordingly, the government entered the affidavit of Joseph Michael Rivera, Jr., Senior Special Agent of the United States Department of Justice, Office of the Inspector General. The district court, on a sua sponte motion, found that the government's affidavit sufficiently refuted appellant's defense of selective prosecution. The court found no basis for the selective prosecution claim, and would not disturb its prior ruling which denied O'Brien's motion to dismiss.
 
 
 11
 Appellant asks for a de novo review of the district court's denial. Unfortunately, appellant has not seen fit to include the government's affidavit in the record before this Court.[3] Since we lack the government's affidavit for comparison, it is difficult to determine whether the district court's sua sponte denial of the motion to dismiss was improper. The missing affidavit creates a problem because we cannot review the basis for the court's conclusion that the government's affidavit effectively refuted the defense's affidavit. We easily affirm the court's conclusion that the appellant failed to present admissible evidence on the issue of other instances involving falsification of employment records during the January 14, 1991 motion hearing: as a matter of law, the district court did not err in that instance by denying appellant's motion to dismiss on the basis of selective prosecution. As a matter of principal, in the absence of the government's affidavit we are required to affirm the judgment of the district court in regard to the sua sponte reconsideration and denial of defendant's motion to dismiss.[4] See Neu v. Grant, 548 F.2d 281, 286 (10th Cir.1977).
 
 
 12
 II. Granting of the government's motions in limine, and the quashing of defense subpoenas.
 
 
 13
 The United States moved in limine to deny admittance of any evidence of the following: that O'Brien was simultaneously pursuing a union grievance to be reinstated at the United States Penitentiary in Leavenworth; that O'Brien was indicted after he had filed that union grievance; and that the prosecution was in any way related to the union grievance. O'Brien sought to bring in evidence regarding the stolen property dispute with the administration at the Leavenworth Penitentiary, and evidence of a vendetta against him by prison officials because of his complaints regarding the treatment of Cuban inmates and favoritism shown to certain employees. He claimed denial of his Fifth Amendment right to due process, and denial of his Sixth Amendment right to have compulsory process for obtaining witnesses.
 
 
 14
 Contending the evidence it requested to exclude bore directly on the issue of selective prosecution which had previously been ruled upon, the government declared the evidence to be irrelevant to the issues before the jury. The court sustained the government's motion. Appellant maintains that his right to a fair trial was thwarted because he was denied the right to present a portion of his defense. He requests that the lower court's decision be reversed, and that the case be remanded for a new trial.
 
 
 15
 The grant or denial of a motion in limine dealing with a question of relevancy is reviewed under the abuse of discretion standard. United States v. Agnew, 931 F.2d 1397, 1409-10 (10th Cir.), cert. denied, 112 S.Ct. 237 (1991); see also United States v. Alexander, 849 F.2d 1293, 1301 (10th Cir.1988). The evidence appellant sought to introduce was relevant only to his selective prosecution argument which had already been denied by the district court as a matter of law. Since the court determined appellant was not the victim of selective prosecution, evidence supporting that claim was irrelevant. The court correctly balanced the probative value of the evidence against its potential prejudicial effect, pursuant to Fed.R.Evid. 403. We discern no abuse of discretion in the district court's grant of the government's motion in limine, and therefore affirm.
 
 
 16
 III. Allegation of prosecutorial misconduct.
 
 
 17
 Appellant filed a motion in limine on March 5, 1991 to exclude the fact he had been charged with possession of stolen property, and to exclude allegations of sexual misconduct during his employment with the Missouri Division of Youth Services. That motion was granted on March 6, 1991. The court determined appellant's past problems to be "irrelevant and inflammatory" and sustained the motion (R.O.A. Vol. III at 10, 13), saying "of course, we can always look at it again, but as of this time I think it would be prejudicial...." (R.O.A. Vol. III at 13).
 
 
 18
 During trial, O'Brien testified on direct that he quit his job because of a personality conflict with his supervisor, and that he had been accused of making a racial slur. (R.O.A. Vol. V at 120, 121) On cross-examination, the prosecutor delved into the reasons appellant left his job, and questioned him concerning allegations that he had approached one of the girls at the Division of Youth Services and commented he thought she was a knockout. Appellant's counsel immediately objected, and asked for a bench conference. The court declared that it would "stay with my ruling on the Motion in Limine and not allow [the prosecutor] to go into this." (R.O.A. Vol. V at 141).
 
 
 19
 The standard of review applying to claims of prosecutorial misconduct where a timely objection was made at trial involves a two-step analysis. United States v. Lonedog, 929 F.2d 568, 572 (10th Cir.), cert. denied, 112 S.Ct. 164 (1991). We must first determine whether the conduct was improper. Id. at 572. If the conduct was improper, we must then ascertain whether that misconduct warrants reversal. Id. Prosecutorial misconduct does not warrant reversal if it was harmless error. Id. at 572 (citing United States v. Alexander, 849 F.2d at 1296; United States v. Taylor, 800 F.2d 1012, 1018 (10th cir. 1986), cert. denied, 484 U.S. 838 (1987)). A non-constitutional error is harmless unless "it had a 'substantial influence' on the outcome or leaves one in 'grave doubt' as to whether it had such an effect." United States v. Rivera, 900 F.2d 1462, 1469 (10th Cir.1990) (en banc) (citation omitted). Most constitutional errors are harmless only if we are convinced beyond a reasonable doubt that they did not affect the outcome of the trial. Lonedog, 929 F.2d at 572; Arizona v. Fulminante, 111 S.Ct. 1246, 1265 (1991). In analyzing whether the misconduct affected the outcome of the trial, the court considers "the curative acts of the district court, the extent of the misconduct, and the role of the misconduct within the case as a whole." Lonedog, 929 F.2d at 572 (quoting United States v. Martinez-Nava, 838 F.2d 411, 416 (10th Cir.1988).
 
 
 20
 In the case before us, the prosecutor's cross-examination of appellant regarding allegations of sexual misconduct violated the court's order in limine. Appellant asserts that the line of questioning was designed to appeal to the jury's passion or bias, and was so prejudicial as to deny appellant a fair trial. O'Brien requests reversal and remand for a new trial.
 
 
 21
 We need not decide whether there was prosecutorial misconduct, because the protested inquiry did not affect the outcome of the trial. See Martinez-Nava, 838 F.2d at 417. The question posed to appellant was as follows: "Isn't it true that [Mr. Robertson] confronted you with approaching one of these girls, having made the comment to them [sic] that you thought they [sic] were a knockout?" Defense counsel immediately objected to the line of questioning, and the court enforced its prior order in limine by barring the prosecution from further inquiry into allegations of sexual misconduct.[5]
 
 
 22
 Moreover, the district court's remarks at the motion in limine hearing clearly indicated that the matter of the alleged sexual misconduct might be broached at the right time, and therefore evidenced the court's willingness to entertain such evidence at an opportune moment. (R.O.A. Vol. III at 13). While the prosecutor violated the standing order in limine, he also had reason to believe that the order was subject to change when given the right circumstances. In light of the circumstances, the prosecutor may have believed in good faith he was entitled to open up this area of cross examination to impeach appellant on his contention that he quit his job over a personality conflict. The extent of the misconduct was therefore slight. See Lonedog, 929 F.2d at 573.
 
 
 23
 Furthermore, the role of any perceived misconduct within the case as an entirety was equally negligible. See id. The reference made to any sexual misconduct was certainly nebulous, at best, and no further references were made. We hold that the outcome of the trial was not affected.
 
 
 24
 IV. Whether the evidence supported the verdict.
 
 
 25
 Finally, appellant maintains that the evidence did not support the verdict because it did not rise to the required level of substantiality. We have stated that
 
 
 26
 [o]ur standard for reviewing the sufficiency of evidence on criminal convictions is whether "[t]he evidence--both direct and circumstantial, together with the reasonable inferences to be drawn therefrom--is sufficient if, when taken in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Hooks, 780 F.2d 1526, 1531 (10th Cir.), cert. denied, 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986). Evidence supporting the conviction "must be 'substantial; that is, it must do more than raise a mere suspicion of guilt.' " United States v. Troutman, 814 F.2d 1428, 1455 (10th Cir.1987) (quoting United States v. Ortiz, 445 F.2d 1100, 1103 (10th Cir.) (footnote omitted), cert. denied, 404 U.S. 993, 92 S.Ct. 541, 30 L.Ed.2d 545 (1971)).
 
 
 27
 United States v. Brandon, 847 F.2d 625, 630 (10th Cir.), cert. denied, 488 U.S. 973 (1988).
 
 
 28
 The evidence presented at trial amply supports the three-count guilty verdict. Appellant's supervisor at the Missouri Division of Youth Services, John Robertson, testified that O'Brien was fired, and his testimony was supported by written documents. Moreover, the evidence regarding O'Brien's false statements is overwhelming. He was employed by the State of Missouri from August 25, 1986 to November 10, 1986. Documents he prepared for his federal position completely omitted that period of employment.
 
 
 29
 Therefore, upon viewing the evidence in a light most favorable to the government, we find that a reasonable jury could have found appellant guilty beyond a reasonable doubt.
 
 
 30
 We AFFIRM the district court's rulings. The court properly denied appellant's motion to dismiss for selective prosecution, and did not err in sustaining the government's motion in limine and in quashing appellant's subpoenas. Furthermore, any alleged prosecutorial misconduct did not affect the outcome of appellant's trial. Lastly, there was sufficient evidence supporting the verdict.
 
 
 
 *
 Honorable Clarence A. Brimmer, District Judge, United States District Court for the District of Wyoming, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel
 
 
 [1]
 Count 1 concerned appellant's certification that all of the answers and statements found in Standard Form 171, Application for Federal Employment, were true, complete, and correct. Count 2 involved a certification of answers and statements taken in an integrity interview; Count 4 concerned the certification of answers and statements for Standard Form 86, Questionnaire For Sensitive Position signed on September 22, 1988; and Count 5 involved a certification for Standard Form 86 signed on April 21, 1989
 
 
 [2]
 Count 3 involved appellant's certification that all answers and statements found in Standard Form 61-B, Declaration of Appointee, were true, complete and correct
 
 
 [3]
 10th Cir.R. 10.2.3., as amended by the Court's Order, filed October 25, 1990, Appendices to Briefs, states in part that:
 Excerpts of the record must be filed in an appendix to appellant's brief. While non-essential parts of the record should not be included in an appendix (see Section B-3, Costs), it is counsel's responsibility to see that the record excerpts in the appendix are sufficient for consideration and determination of the issues on appeal and the court is under no obligation to remedy any failure of counsel to fulfill that responsibility.
 10th Cir.R. 10.2.3., as amended by the Court's Order, filed October 25, 1990, Appendices to Briefs, B.2(d), states: "Other items, including excerpts of transcript, should be included when expressly referred to in the brief and when they are relevant to an issue raised on appeal."
 
 
 [4]
 Even if we were to assume that the government's affidavit did not refute defense counsel's affidavit, however, the result would be the same. Appellant contends that other employees falsifying information had not been prosecuted as he was: those employees were merely required to submit an explanatory memorandum, and the matter went no further. Defense counsel's affidavit concerning Len Peterson substantiates that there was at least one other instance of an employee falsifying former employment information. However, the affidavit does not sufficiently set out the facts concerning Peterson. It merely says that he failed to report his employment and termination with the Pinkerton agency. The affidavit does not explain how long Peterson was employed, or what circumstances prompted his termination. The affidavit is insufficient to show that Peterson and O'Brien were similarly situated, and thus fails to meet the showing required in Who'd that any policy established by the government had a discriminatory effect. Who'd, 470 U.S. at 608. Appellant's contention that he presented adequate evidence to support his selective prosecution claim therefore fails
 
 
 [5]
 The record before us does not demonstrate whether the jury was instructed as part of the general charge that evidence of other crimes, wrongs, or acts should not be considered by the jury as evidence of the defendant's character. Thus, we would not recognize any argument by appellant that such an instruction was not given, or did not have a curative effect if given. See n. 3, supra