**F I L E D**
**United States Court of Appeals
Tenth Circuit**

**DEC 22 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ROBERT MAASS,

Defendant-Appellant.

No. 97-2118
(No. CR-96-193-BB)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **PORFILIO**, **McKAY**, and **BRISCOE**, Circuit Judges.

---

Robert J. Maass appeals his conviction of threatening a federal official, in

violation of 18 U.S.C. § 115. We exercise jurisdiction under 28 U.S.C. § 1291,

and affirm.

I.

This case arises from an argument between Maass and Richard Skrondahl, a

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

mail carrier. While Skrondahl was putting mail in the mailboxes at Maass'

apartment complex on March 8, 1996, Maass verbally accosted him, calling him a

"woman" and stating, "Let's go outside." R. II at 138. Skrondahl testified it was

distracting and it slowed his job performance. When he had finished, Skrondahl

walked to his postal vehicle. Maass followed him and told Skrondahl he was

going to kill him or have him killed. Skrondahl got into the vehicle and shut the

door, and Maass struck the window of the vehicle with his arm, "like in rage." Id.

at 140.

After Skrondahl left, Maass called Mary Brosnan at postal inspection

service to complain about Skrondahl. Maass told her Skrondahl had insulted him

and he expressed his general distaste for Skrondahl. Maass repeatedly stated he

would "take down" Skrondahl if he saw him again. He explained to Brosnan this

meant he was going to "knock [Skrondahl] down and beat the shit out of him as

opposed to what people nowadays [think] it mean[s] to be blown away." R. III at

241. However, Brosnan's further questioning resulted in Maass denying

threatening Skrondahl. Maass then wrote a letter to the Albuquerque Postmaster

complaining about Skrondahl and asking that Skrondahl be tested for drugs and

reassigned to a different postal route. Postal Inspector Oscar Villanueva

conducted a taped interview with Maass on March 13, 1996. Maass denied

threatening Skrondahl or striking the postal vehicle. He acknowledged that he

wrote to the postmaster and called the postal inspection office, but denied telling Brosnan he would "take down" Skrondahl.

Skrondahl continued to deliver mail to Maass' complex until his route was changed for other reasons. For a few days after the incident, Skrondahl requested that an unarmed escort accompany him to the complex. After he learned Maass was prohibited from speaking to him, Skrondahl stopped requesting an escort, but he testified that he continued to feel nervous when he made deliveries to Maass' complex.

## II.

### Prior Bad Act Evidence

Maass contends his conviction should be reversed because the district court erred in admitting prior bad act evidence. Maass was charged in 1992 with mailing threatening communications and in 1994 with making a threat, and he entered into pretrial diversion agreements in both cases. The agreements required him to accept responsibility for his conduct but did not require that he formally plead guilty to the offenses. Maass complied with the agreements, and both charges were dismissed. Maass filed a motion in limine in the present case to prevent the government from admitting the diversion agreements into evidence, and the court reserved ruling until trial. At trial, the agreements were admitted into evidence and defense counsel did not object. The agreements were discussed

during cross-examination of Maass' three character witnesses and during the government's closing argument. The court gave a limiting instruction when the agreements were admitted into evidence and in its final jury instructions.

Although Maass filed a motion in limine to exclude evidence of prior charges, the district court did not issue a definitive ruling regarding admissibility. Therefore, to preserve the issue for appeal, Maass was required to object when the agreements were offered into evidence at trial. See United States v. Sinclair, 109 F.3d 1527, 1536 (10th Cir. 1997). Since Maass did not object at trial, we review this issue for plain error only. See United States v. Wilson, 107 F.3d 774, 782 (10th Cir. 1997).[1] Plain error exists when an error has seriously affected the fairness, integrity, or public reputation of judicial proceedings. Johnson v. United States, 117 S. Ct. 1544, 1549 (1997). "In order to determine whether a trial court has committed plain error, the entire record must be reviewed." United States v. Culpepper, 834 F.2d 879, 883 (10th Cir. 1987).

Federal Rule of Evidence 404 prevents introduction of character evidence to prove an individual has acted in conformity with that character trait on a particular occasion. However, it permits admission of "[e]vidence of other crimes, wrongs, or acts . . . for other purposes, such as proof of motive,

---

[1] The government argues Maass has waived plain error review of this alleged error. This contention is without merit. See McEwen v. City of Norman, Oklahoma, 926 F.2d 1539, 1544-45 (10th Cir. 1991).

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). In reviewing whether the district court properly admitted 404(b) evidence, this court applies a four-part test to determine whether (1) the evidence was offered for a proper purpose under 404(b); (2) the evidence was relevant under Federal Rule of Evidence 401; (3) the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice under Federal Rule of Evidence 403; and (4) the district court, upon request, instructed the jury to consider the evidence only for the purpose for which it was admitted. Wilson, 107 F.3d at 782 (citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988)).

The prosecutor wanted to introduce the pretrial diversion agreements into evidence to show Maass possessed the requisite intent to commit the charged crime, or that Maass had "prior knowledge and notice that threats against federal officers violated the law." R. I, doc. 30 at 2. Maass concedes intent is a proper purpose under 404(b), but he argues the intent at issue in the present charge differs from that involved in the charges underlying the agreements.

The pretrial diversion agreements were also relevant. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Maass was charged

with threatening a federal official.  To convict him of the crime, the government was required to establish that he intended to communicate a threat.  See United States v. Orozco-Santillan, 903 F.2d 1262, 1266 n.3 (9th Cir. 1990).  Whether Maass was serious when he made the threatening statements was a central issue in the case.  The fact that Maass previously had made threatening statements to a government agency and a government official that resulted in his being charged with violating federal laws sheds light on whether his statements to Skrondahl and Brosnan should be considered threats.  It is more likely that, having been charged with issuing a threat in violation of federal law, an individual would not later joke about "taking down" or killing his or her letter carrier.  See United States v. Dysart, 705 F.2d 1247, 1258 (10th Cir. 1983); see also United States v. Frederickson, 601 F.2d 1358, 1365 (8th Cir. 1979).  Because the agreements were probative of whether Maass' statements should be considered threats, the agreements were relevant.[2]

As discussed, the pretrial diversion agreements were extremely probative of Maass' state of mind and whether he was joking was a central issue in the case.

---

[2] Maass also argues the agreements did not provide the jury enough information to draw any proper inferences.  However, the fact that he was previously *charged* with threatening the government and its officials provided enough information for the jury to infer such a person could reasonably foresee statements like "I will kill you" or "I am going to take him down" would be taken as threats.  It was not necessary to provide additional details of the charges to the jury.

The district court specifically determined the probative value of the pretrial diversion agreements outweighed any possible prejudicial effect on Maass. We give great deference to that determination. See United States v. Reddeck, 22 F.3d 1504, 1509 (10th Cir. 1994).

Finally, the district court properly instructed the jury to use the pretrial diversion agreements for a limited purpose, namely to determine whether Maass had the state of mind or intent necessary to commit the acts charged in the indictment. In other words, the jury was told to use the agreements to determine whether Maass issued a threat. See United States v. Fulmer, 108 F.3d 1486, 1491-92 (1st Cir. 1997). The district court provided this limiting instruction immediately after the agreements were admitted into evidence. See Reddeck, 22 F.3d at 1510. The instruction was not merely a recitation of the technical language of 404(b), but was a carefully crafted explanation of specifically how the jury was to use the agreements.

Because the four-part Huddleston test was satisfied, the district court's decision to admit the pretrial diversion agreements into evidence did not constitute plain error.

## III.

### Prosecutorial Misconduct

Maass also contends the prosecutor made three comments that amounted to

prosecutorial misconduct and which entitle him to a new trial. When an appellant preserves the issue on appeal, we use a two-step procedure to evaluate a claim of prosecutorial misconduct. First, we examine whether the conduct was, in fact, improper. If we answer that question in the affirmative, we must then determine whether it warrants reversal. United States v. Ivy, 83 F.3d 1266, 1288 (10th Cir.), cert. denied 117 S. Ct. 253 (1996) (citing United States v. Lonedog, 929 F.2d 568, 572 (10th Cir. 1991)). "Prosecutorial misconduct does not warrant reversal if it was harmless error." Lonedog, 929 F.2d at 572. A non-constitutional error is harmless unless it had a substantial influence on the outcome or leaves one in 'grave doubt' as to whether it had such effect. Id. (citing United States v. Rivera, 900 F.2d 1462, 1469 (10th Cir. 1990) (en banc)). In determining whether prosecutorial misconduct affected the outcome, requiring reversal, we examine "'the curative acts of the district court, the extent of the misconduct, and the role of the misconduct within the case as a whole.'" Id. (quoting United States v. Martinez-Nava, 838 F.2d 411, 416 (10th Cir. 1988)). An allegation of prosecutorial misconduct presents a mixed question of fact and law that we review de novo. Ivy, 83 F.3d at 1288.

Maass argues the prosecutor misrepresented the effect of the pretrial diversion agreements because she referred to the agreements as establishing he accepted responsibility for threatening a federal agency and federal officials.

Maass takes issue both with the level of culpability he accepted and the description of the underlying behavior. He argues that although the agreements indicate he "accepted responsibility" for the "unspecified behavior" that led to the charges, he did not "plead guilty" to threatening a federal official or a federal agency. Maass' argument ignores the fact that he stipulated the "unspecified behavior" referenced in the agreements was his threatening of a federal official and a federal agency. The prosecutor did not misrepresent evidence by publishing this stipulation to the jury. Moreover, it is very unlikely the jury believed Maass pleaded guilty to threatening a federal official or a federal agency because the orders dismissing both charges were also admitted into evidence.

During summation, the prosecutor told the jury it was in court to enforce the law. Maass moved for a mistrial arguing the jury's function was to weigh facts, not enforce the law. The court denied the motion and declined to give the jury a limiting instruction clarifying its duties. Maass' counsel responded to the argument in her closing argument, stating: "Now, Ms. McCulloch just said that you are here to enforce the law. That's not true. You are not here to enforce the law. . . . Your function is to decide the facts." R. IV at 470.

A prosecutor may not use closing argument to inflame the passions and prejudice of the jury. See United States v. Pena, 930 F.2d 1486, 1490-91 (10th Cir. 1991). The jury's function is to weigh the evidence and determine whether

the government has sustained its burden of proof. It is improper to inflame the passions or prejudice of the jury by implying that the jury has a different role. See United States v. Manning, 23 F.3d 570, 574 (1st Cir. 1994) ("[A]rguments urging a jury to act in any capacity other than as the impartial arbiter of the facts in the case before it are improper."); Arrieta-Agressot v. United States, 3 F.3d 525, 527 (1st Cir. 1993) (prosecutor's argument that jurors were present to fight war on drugs improper); People of Territory of Guam v. Quichocho, 973 F.2d 723, 727 (9th Cir. 1992) (prosecutor's argument that jurors are "truly the final law enforcers in our community," coupled with reference to murdered children, was improper); United States v. Smith, 930 F.2d 1081, 1089 (5th Cir. 1991) (prosecutor mischaracterized jury's role as being to "decide which of our federal laws are going to be enforced"). However, when not calculated to inflame the passion and prejudice of a jury, a prosecutor can urge the jury to enforce the law. See United States v. Carter, 953 F.2d 1449, 1461 (5th Cir. 1992) (prosecutor's comment that police had "done their jobs . . . now you have to do your job" did not "go beyond proper limits of a plea for law enforcement); United States v. Brown, 887 F.2d 537, 542 (5th Cir. 1989) (prosecutor's statement to jury that "it's up to you to do something about [society's drug problem by] . . . returning a verdict of guilty on these charges" not plain error); but see United States v. Young, 470 U.S. 1, 18 (1985) (improper for prosecutor to urge jury to "do its

-10-

job"); United States v. Mandelbaum, 803 F.2d 42, 44 (1st Cir. 1986) (improper for prosecutor to urge jury to do its duty).

In the present case, the prosecutor's comment was not calculated to inflame the passion and prejudice of the jury. Moreover, the comment about the jury's role was singular and isolated. See Pena, 930 F.2d at 1491. Maass' counsel addressed the prosecutor's comment and the jury's role in closing argument. In its final instructions to the jury, the court referred to the jury's role in the trial as that of a "judge." Finally, the court instructed the jury three times that statements and arguments of counsel were not evidence. If the prosecutor's comment was improper, it constituted harmless error.

Maass moved for a mistrial on the basis of the prosecutor's statement to the jury during closing argument to consider "[i]f it was you, would you ignore those words?" R. IV at 468. Maass argued it was improper to personalize the threats. The court denied the motion for mistrial. Asking jurors to put themselves in the position of the victim is commonly referred to as a "Golden Rule" appeal. Blevins v. Cessna Aircraft Co., 728 F.2d 1576, 1580 (10th Cir. 1984). Such an appeal is regarded as "improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." Id. (quoting Ivy v. Security Barge Lines, Inc., 585 F.2d 732, 741 (5th Cir. 1978)). Comments which personalize the crime with the

individual jurors by urging the jurors to put themselves in the victim's place should be avoided by the prosecution. Such comments will give rise to an appellate issue and, if egregious enough, reversal of the conviction. United States v. Manriquez-Arbizo, 833 F. 2d 244, 248 (10th Cir. 1987).

Although the prosecutor's comment was arguably improper, we need not give Maass a new trial on this basis. A prosecutor's comment should be reviewed in the context of the entire record, not in a vacuum, and this comment was singular and isolated. See id. at 247; Pena, 930 F.2d at 1491. Moreover, the district court instructed the jury three times that statements and arguments of counsel were not evidence. Under these circumstances, the prosecutor's comment, if error, was harmless.

## IV.

### Cumulative Error

Maass also argues the cumulative errors in his trial necessitate a new trial. "A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Rivera, 900 F.2d 1462, 1470 (10th Cir. 1990) (en banc). However, cumulative-error analysis only aggregates actual errors. Id. "Individual rulings frequently

will have an adverse effect on a party, but unless that party can demonstrate that the ruling was an error, reversal would not be warranted." Id. at 1470-71.

Since we find only one instance of harmless error here, a cumulative-error analysis is not necessary. The alleged errors in this case might have had an impact on the outcome of the trial, but "impact alone, not traceable to error, cannot form the basis for reversal." Id. at 1471.

V.

Maass' conviction is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge