**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 29 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ORVIN LYNN MIXON,

    Defendant - Appellant.

No. 98-3004

(D.C. No. 96-40065-01-RDR)

(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **McKAY**, and **EBEL**, Circuit Judges.

After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant Orvin Lynn Mixon was convicted by a jury for possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1). The

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

district court sentenced him to 120 months' imprisonment. Defendant appeals his conviction and sentence raising several arguments. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

On March 11, 1996, Defendant drove a black Isuzu car to the Midas Muffler Shop in Salina, Kansas, for brake service. Francisco Rodriguez was a passenger in the car. Because the work being performed was under warranty, Mark Taddikan, the manager of the Midas shop, looked in the unlocked glove compartment for the warranty documentation and found a large roll of money in a plastic sandwich bag. He called the Salina Police Department to report what he had found. Meanwhile, during the time that Defendant and Mr. Rodriguez waited for the car to be repaired, they sat in the waiting area of the shop eating and drinking items which they had purchased at a nearby Sonic Drive-In.

Shortly after the manager called the police, as Defendant and Mr. Rodriguez were outside preparing to leave in the repaired car, two police officers, Lieutenant Mike Marshall and Captain Brad Homman, arrived at the Midas shop. The officers announced that they were investigating a report of drug activity relating to the car Defendant had brought to the shop. Defendant admitted that he

had driven the car to the shop and told the officers that his friend, Jami Piercy,[1] owned the car. In their search of the car, the officers found the roll of cash totaling $2,470.00 in a plastic bag in the glove compartment. Both Defendant and Mr. Rodriguez denied owning the money. Officer Marshall called Ms. Piercy to determine if she owned the money, but she too denied that the money belonged to her. At some point after the police finished searching the car and questioning Defendant and Mr. Rodriguez, Defendant gave his Sonic Styrofoam cup to the manager and asked him to throw it away. The officers then confiscated the money and left, and Defendant and Mr. Rodriguez left the Midas shop in the black Isuzu.

The next day an unidentified woman called the manager at the Midas shop and told him to look in the Sonic Drive-In cup that he had thrown away for Defendant the day before. The manager retrieved the cup from the trash, discovered what appeared to be drugs inside, and called the police. The police seized the cup and its contents, approximately 6.6 grams of cocaine base.

Based on these facts, Defendant was indicted on October 9, 1996, on one count of possession with intent to distribute in excess of five grams of cocaine base. After a jury found him guilty, Defendant moved the district court for a new

---

[1]Although the correct spelling appears to be "Piercy," some record documents spell her last name "Percy."

trial and for a judgment of acquittal. The district court denied Defendant's motions. On appeal, Defendant contends that (1) the court erroneously denied his motion to suppress; (2) the court improperly admitted prior bad act and hearsay evidence; (3) the evidence was insufficient to support his conviction; (4) prosecutorial misconduct prejudiced him; and (5) the court erroneously enhanced his sentence. We address each argument in turn.

### I. Motion to Suppress

Defendant first argues that the court erroneously denied his motion to suppress all evidence seized after he was unlawfully detained by the officers at the Midas shop. Specifically, he claims that the officers violated the Fourth Amendment by detaining him without reasonable suspicion and that the evidence seized should be suppressed as fruits of the detention. The Government responds by asserting that because the detention was justified at its inception and reasonable in scope the evidence, including the money and crack cocaine, was properly seized and admissible in court. Citing Florida v. Bostick, 501 U.S. 429, 434 (1991), and United States v. Lambert, 46 F.3d 1064, 1067 (10th Cir. 1995), the district court first determined that the encounter between Defendant and the officers was consensual. The court based this conclusion on its findings that the encounter was a brief one in which the plainclothes officers merely asked

-4-

Defendant a few questions, made no effort to prevent him from leaving, did not display their guns or command him to do anything, and Defendant made no attempt to leave or indicate that he did not want to talk to the officers. See R., Vol. 1, Doc. 35 at 12-13. Then, assuming that a detention had occurred, the court determined that "the actions taken by the officers were appropriate under Terry [v. Ohio, 392 U.S. 1 (1968)]." Id. at 13.

In reviewing the denial of a motion to suppress, we view the totality of the evidence in the light most favorable to the government, and we accept the district court's factual findings unless they are clearly erroneous. See United States v. Torres-Guevara, 147 F.3d 1261, 1264 (10th Cir. 1998). We review de novo whether a defendant's interaction with law enforcement constitutes a consensual encounter which does not implicate the Fourth Amendment or an investigative detention supported by reasonable suspicion. See id. We also review de novo the ultimate determination of reasonableness under the Fourth Amendment. See United States v. Anderson, 114 F.3d 1059, 1063 (10th Cir. 1997).

Supreme Court precedent makes clear "that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required." Bostick, 501 U.S. at 434 (quoting California v. Hodari D., 499 U.S.

621, 628 (1991)).  "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred" which implicates Fourth Amendment protections.  Terry, 392 U.S. at 19 n.16.

Unlike the circumstances of many of our seizure cases, Defendant was not stopped by law enforcement pursuant to a traffic violation or some other violation of law.  Because no detention occurred, we need not examine whether a detention became a consensual encounter.  Instead, we agree with the district court that the encounter began in a consensual manner when Lieutenant Marshall and Captain Homman arrived at the Midas shop in plain clothes and unmarked police cars.  We must ask, then, whether "'a reasonable innocent person, as opposed to a person knowingly carrying contraband, would feel free to leave'" under the circumstances of this case.  United States v. Sanchez, 89 F.3d 715, 718 (10th Cir. 1996) (quoting United States v. Laboy, 979 F.2d 795, 798 (10th Cir. 1992)).  If the encounter in this case meets this test, it is consensual and need not be supported by reasonable suspicion of criminal activity.  See id.  Courts have acknowledged several factors that could lead a reasonable person to believe that he is not free to disregard the police officer, such as:

> the threatening presence of several officers; the brandishing of a
> weapon by an officer; some physical touching by an officer; use of
> aggressive language or tone of voice indicating that compliance with
> an officer's request is compulsory; prolonged retention of a person's

personal effects such as identification and plane or bus tickets; a request to accompany the officer to the station; interaction in a nonpublic place or a small, enclosed space; and absence of other members of the public.

Id.

Our review of the record indicates that none of these factors existed in this case. The plain-clothed officers approached Defendant and Mr. Rodriguez displaying their badges to identify themselves. The number of officers–two–matched the number of individuals being questioned–Defendant and Mr. Rodriguez. We cannot say that this constituted a threatening presence. The encounter took place outside the service area in the parking lot of the Midas shop. The manager testified that while he was not present during the entire encounter he could observe the entire encounter and he was present at the beginning and towards the end of the encounter. The officers arrived in unmarked police cars and did not block Defendant's vehicle or the Midas shop's exit. The record indicates that the work on the Isuzu car was complete and Defendant was preparing to leave before the officers arrived; there is no evidence to support Defendant's contention that the officers would have stopped him had he tried to leave. In fact, nothing in the record indicates that the officers attempted to prevent Defendant and Mr. Rodriguez from leaving by any threat or show of authority (the officers never displayed their guns) or that Defendant and Mr. Rodriguez ever indicated that they wished to leave or attempted to leave. While

-7-

the officers did not explicitly advise Defendant or Mr. Rodriguez that they were free to leave or free not to speak with the officers, "that is not required for an encounter to be consensual." Anderson, 114 F.3d at 1064 (citing Ohio v. Robinette, 519 U.S. 33, 39-40 (1996), for its rejection of a per se rule that officers must always inform detainees that they are free to leave before a consent to search is voluntary); see also United States v. Elliott, 107 F.3d 810, 814 (10th Cir. 1997) (noting that encounter was consensual even though officer did not tell driver she was free to go). Additionally, there is no evidence that the officers' questioning was accompanied by any coercive show of authority, such as using a commanding tone of voice, physically touching Defendant, or showing or touching a weapon, which would indicate that compliance with the request to search the car was compulsory. The circumstances suggest that Defendant voluntarily responded to questions asked by Lieutenant Marshall and voluntarily consented to the search of the car, which lasted less than five minutes. Finally, there is no evidence or argument that the officers retained any of Defendant's personal effects such as his license or the vehicle registration. Once they ascertained that Ms. Piercy did not own the money, the officers confiscated it and left the Midas shop.

We can find no clear error in the court's factual findings, and, given the totality of the circumstances, the recited factors suggest that a reasonable person

would have felt free to leave.  Therefore, we hold that (1) the encounter between Defendant and the officers was consensual and no reasonable suspicion was required; (2) Defendant voluntarily consented to a search of the vehicle; and (3) the encounter did not become an investigatory detention at any time.  The court properly denied Defendant's motion to suppress evidence obtained as a result of the encounter at the Midas shop.

## II.  Evidentiary Errors

Defendant argues that the court violated the Federal Rules of Evidence in several manners.  He urges us to consider these alleged errors under the rubric of impermissible propensity evidence which violates Federal Rule of Evidence 404(b), though he relies on other evidentiary rules as well.  We review a court's admission of evidence for an abuse of discretion.  See United States v. Wilson, 107 F.3d 774, 782 (10th Cir. 1997).

## A.  Prior Conviction

We first address whether the court abused its discretion in admitting evidence of Defendant's 1993 conviction for possession of crack cocaine and drug paraphernalia.  At trial, Lieutenant Marshall testified that he had been involved in the prior conviction.  He identified Defendant as the same person

convicted for the possession charge and testified that both the instant and the prior offenses involved crack cocaine. He also testified that the cocaine was packaged in a similar manner in both offenses, but he admitted on cross-examination that he could not remember whether he had seen the packaging. The journal entry for the conviction was also admitted into evidence. Defendant claims that this evidence amounted to inadmissible character evidence suggesting that he had a propensity to commit the crime for which he was charged.

Rule 404(b) proscribes admission of evidence of prior crimes, wrongs, or acts if offered "to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. To determine whether a prior conviction is admissible under Rule 404(b), we apply a four-part test set out in United States v. Huddleston, 485 U.S. 681, 691-92 (1988): (1) the evidence must be offered for one of the proper purposes articulated by Rule 404(b); (2) it must be relevant under Rule 402; (3) its probative value must outweigh its prejudicial effect under Rule 403; and (4) the trial court, upon request, must instruct the jury to consider the evidence only for the purpose for which it was admitted, as required by Rule 105. See Wilson, 107 F.3d at 782.

Applying the first prong of the <u>Huddleston</u> test, the record demonstrates that the Government offered Lieutenant Marshall's testimony to show that: (1) Defendant's possession of crack cocaine was intentional and not the result of an accident or mistake; (2) he was familiar with the substance of crack cocaine and knew it was illegal and how to procure it; and (3) the similar packaging indicated that Defendant prepared the crack cocaine for distribution and planned to distribute it. <u>See</u> R., Vol. 1, Doc. 60 at 2-3. We agree with the district court that the Government precisely articulated proper purposes for the evidence under Rule 404(b).

With respect to the second prong, we previously "have noted that prior narcotics involvement is relevant when that conduct is 'close in time, highly probative, and similar to the activity with which the defendant is charged.'" <u>Wilson</u>, 107 F.3d at 785 (quoting <u>United States v. McKinnell</u>, 888 F.2d 669, 676 (10th Cir. 1989)). The prior conviction in this case does not meet these requirements for relevance. First, the offenses are not close in time because the conduct for which Defendant was convicted in 1993 occurred in 1992, almost four years before the conduct charged in the instant offense. Second, the prior conviction is factually dissimilar from the instant offense. In this case, a Midas shop manager found a large amount of cash in a car which Defendant was driving and discovered cocaine base in a cup which Defendant had carried. By contrast,

-11-

the prior conviction arose from cocaine found in a search of a house where Defendant and other individuals resided, and the search was conducted pursuant to a warrant for other individuals wanted in connection with a series of robberies. Third, the prior conviction is not highly probative of the conduct for which Defendant was charged in this case. "Although there is a relationship between a person's possession of cocaine and his or her knowledge of the substance itself, such fact taken alone does little to support an inference that [Defendant] either possessed, knew he possessed, or intended to distribute the cocaine found" in the Sonic cup. Id. We agree with Defendant that this case more closely resembles the scenario in Wilson, where the prior offense was factually dissimilar to the subsequent offense, than other Tenth Circuit cases holding that the prior convictions were highly probative because the prior arrests were factually alike and involved similar charges. See id. (determining that conviction for distribution of drugs from a residence was factually dissimilar to prior offense stemming from police's discovery of drugs after arrest for driving with a suspended license, and distinguishing four Tenth Circuit cases which affirmed the admission of prior conviction evidence due to similarities between prior offenses and instant offenses). We conclude that the prior conviction was not relevant to show the purposes for which it was admitted.

As for the third requirement in Huddleston, we believe that the limited

probative value of the prior conviction evidence was outweighed by the potential for unfair prejudice to Defendant. A jury would likely infer from the prior conviction that Defendant uses cocaine and therefore was likely to have known that the cup contained cocaine. Given the factual dissimilarity of the offenses, the limited probative value of the prior offense, and the danger of unfair prejudice, we hold that the court abused its discretion in admitting evidence of the 1993 conviction.

Although the admission of the journal entry and testimony regarding the 1993 conviction was an abuse of discretion, this non-constitutional error only merits reversal if "it had a 'substantial influence' on the outcome or leaves [us] in 'grave doubt' as to whether it had such an effect." United States v. Wacker, 72 F.3d 1453, 1473 (10th Cir. 1995) (citation omitted). To determine whether the error was harmless, we examine the entire record de novo to see whether the prior conviction substantially influenced the jury's verdict. See Wilson, 107 F.3d at 785-86.

The record contains sufficient independent circumstantial evidence of Defendant's guilt to overcome the erroneous admission of the prior conviction evidence. Guilty knowledge and possession may be inferred from trial testimony demonstrating that Defendant was holding the Sonic cup which was later discovered to contain the crack cocaine; Defendant handed the cup to the manager

of the Midas shop; the manager threw the cup in the trash and recovered the same cup from the same trash can the next morning; and the cup indeed contained crack cocaine. Additionally, the jury could infer that, during the encounter at the Midas shop, Defendant did not want the police to know that the money was his. The evidence shows that Defendant denied owning the money during the encounter and when he was arrested, even though he later claimed that he rightfully possessed the money. From this evidence, from the fact that the officers found $2,400 in cash in the glove box of the vehicle driven by Defendant, and from testimony that the money was packaged in a manner consistent with drug dealing, the jury could also infer that Defendant obtained the money from dealing drugs. Finally, the jury could infer that Defendant intended to distribute the crack cocaine from testimony that crack cocaine was commonly carried in insulated mugs or cups and concealed with ice.

Further, we think that the court's instructions limiting how the jury could consider evidence of a prior conviction helps abate any prejudice to Defendant potentially caused by the admission of this evidence. When the evidence was offered at trial, the court instructed the jury that the evidence "may not be considered . . . in determining whether the defendant actually performed the physical act charged in the indictment." R., Vol. 6 at 366. Additionally, the court cautioned the jury not to consider such evidence for any other purpose (such as

determining Defendant's state of mind, knowledge, or intent) *until after* the jury found beyond a reasonable doubt from *other* evidence that Defendant committed the act charged in the indictment. See id. The court repeated these cautionary instructions in its general instruction to the jury after all the evidence was heard. See id., Vol. 1, Doc. 63 at Instr. No. 13. We presume that the jury followed these instructions. See United States v. Castillo, 140 F.3d 874, 884 (10th Cir. 1998). Therefore, any prejudice to Defendant was mitigated by the court's "cautioning the jury not to infer guilt from evidence of prior similar acts." United States v. Conway, 73 F.3d 975, 982 (10th Cir. 1995).

Given these instructions and the significant evidence of Defendant's guilt, we hold that the court's admission of the prior conviction was harmless because it did not substantially influence the outcome of the trial.

Although we have determined that the erroneous admission of the prior conviction evidence, including Lieutenant Marshall's testimony, was harmless, we will briefly address Defendant's constitutional argument. He contends that Lieutenant Marshall's testimony did not comport with Federal Rule of Evidence 602 because it was based on hearsay and not on personal knowledge. He then claims that the violation of Rule 602 denied him the right to confront his accuser under the Sixth Amendment.

Rule 602 of the Federal Rules of Evidence provides that "[a] witness may

-15-

not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. In challenging the admission of Lieutenant Marshall's testimony under this rule, Defendant claims that the lieutenant's testimony was hearsay because he had no personal knowledge of the seized evidence since he was not present during the search which yielded the crack cocaine and drug paraphernalia for the 1993 conviction.

While Lieutenant Marshall's testimony contained some element of uncertainty, we think it was sufficiently based on personal knowledge. The record clearly shows that the lieutenant did not participate in the search relating to the 1993 conviction. However, without stating definitively that he had seen the crack cocaine and other physical evidence, the lieutenant testified that it was very possible that he had viewed that evidence after it had been seized and Defendant had been arrested. The record also suggests that Lieutenant Marshall had difficulty remembering with certainty whether he had seen the crack cocaine and its packaging because of the passage of time and his heavy workload of drug cases. Nevertheless, the uncertainty of the officer's knowledge does not preclude its admission into evidence. See M.B.A.F.B. Fed. Credit Union v. Cumis Ins. Soc'y, Inc., 681 F.2d 930, 932 (4th Cir. 1982). Rule 602 "'does not require that the witness' knowledge be positive or rise to the level of absolute certainty.

-16-

Evidence is inadmissible . . . only if in the proper exercise of the trial court's discretion it finds that the witness could not have actually perceived or observed that which he testifies to.'" United States v. Sinclair, 109 F.3d 1527, 1536 (10th Cir. 1997) (quoting M.B.A.F.B. Fed. Credit Union, 681 F.2d at 932).

In denying Defendant's motion for a new trial, the district court found that Lieutenant Marshall "had sufficient knowledge of the prior case to allow his testimony on the packaging of the crack cocaine." R., Vol. 1, Doc. 79 at 10. Having reviewed the record, we agree with that assessment. Although the question of admissibility was a close one, we cannot say that the trial court abused its discretion in ruling that the witness could have seen the packages of the crack cocaine from the 1993 case and that this was a matter of credibility for the jury to determine. Accordingly, we hold that the court did not abuse its discretion under Rule 602 in admitting Lieutenant Marshall's testimony.[2]

### B. Ms. Dawn's Testimony

Defendant argues that the court abused its discretion by allowing Ms. Melissa Dawn to testify in two respects. First, Ms. Dawn testified that many people visited Defendant at the trailer which she shared with him for a period of

---

[2]Because we conclude that the court did not violate Rule 602, we need not reach Defendant's Sixth Amendment argument.

-17-

time preceding the March 11, 1996 incident in this case.  She stated that a lot of people were "coming and going through the house" causing "high traffic."  Id., Vol. 5 at 192.  Defendant seems to argue that this testimony was irrelevant because it was not in accordance with either the Government's proffer concerning "high traffic" testimony or Captain Homman's expert testimony that the residence's "high traffic" suggested that drugs were sold there.  Defendant also claims that the irrelevance of Ms. Dawn's testimony renders Captain Homman's "high traffic" testimony irrelevant.

We agree with the district court that Ms. Dawn's testimony was consistent with the Government's pretrial proffer.  The Government proffered that Ms. Dawn would testify that "a steady stream of visitors" came to the residence she shared with Defendant, id., Vol. 1, Doc. 60 at 3, and that they would go into Defendant's bedroom, close the door, and stay for a short time before they left.  The Government also indicated that Ms. Dawn would testify that she feared Defendant was involved in illegal drug trafficking activities and that she reported this to the Salina Police Department.  Although her testimony was somewhat obscured on cross-examination, Ms. Dawn definitively stated that she went to the police station on the same day that she heard about the incident at the Midas shop from Mr. Mixon and that she reported to the police that she was nervous about the high level of traffic at her house because she was on probation, had an infant, and

did not want to get into trouble.  This evidence is relevant to and probative of whether Defendant knowingly and intentionally sold cocaine.  Additionally, Ms. Dawn's "high traffic" testimony is made more relevant by the expert testimony of Captains Homman and Marshall, both of whom stated that an abnormal amount of traffic, i.e., several visits to a house every day and night, is indicative of drug dealing.  Finally, although Ms. Dawn testified that some of Defendant's visitors stayed for long periods of time, she also testified that the visitors would come and go, which is consistent with the officers' testimony and the Government's proffer. In light of the strong record on this point, we hold that the court did not abuse its discretion in allowing Ms. Dawn's "high traffic" testimony, and we therefore reject Defendant's claim that Captain Homman's testimony was irrelevant.

Second, Defendant objects to Ms. Dawn's testimony that she kicked Defendant out of the trailer after he told her about the incident at Midas because she was concerned that "he was selling drugs again." Id., Vol. 5 at 185.  He claims that this testimony was inadmissible under Federal Rule of Evidence 404(b).

Initially, we examine the underlying context of this testimony to determine our standard of review.  After Ms. Dawn stated that she had reason to suspect that Defendant was doing something illegal and wanted him out of her house, the prosecutor asked her, "What is it that he was doing that made you think he might

be doing something illegal?" Id. She replied that she thought "[t]hat he was selling drugs again." Id. Responding to a question asking her the basis of that belief, Ms. Dawn then stated that Defendant "had been in prison for [selling drugs] before." Id. Before Ms. Dawn could testify as to what she had heard about Defendant selling drugs, Defendant objected that Ms. Dawn was about to testify to hearsay and that her statement that Defendant had been in prison violated Rule 404(b) because it suggested that Defendant had a prior conviction. See id. at 186. The court sustained the objection and instructed the jury to completely disregard Ms. Dawn's statement that Defendant had been in prison for selling drugs. See id. at 189. Because Defendant's objection came after the "in prison" statement, it is not clear at first blush that Defendant contemporaneously objected to Ms. Dawn's statement about Defendant "selling drugs again." However, we think that the colloquy between the court and defense counsel pertained not only to the "in prison" statement and subsequent objection but also to Ms. Dawn's prior statement about "selling drugs again." See id. at 186-88. Therefore, we think the Defendant sufficiently objected to this earlier statement, and we review the admission of this statement for an abuse of discretion.

First, Defendant's Rule 404(b) argument is off the mark. Ms. Dawn's statement that she thought Defendant was selling drugs again does not constitute prior bad act evidence. Ms. Dawn was not testifying about something Defendant

-20-

had done but instead she was explaining why she no longer wanted to share her residence with Defendant. Moreover, her belief was based on her observation of numerous people coming and going from her residence while visiting Defendant. In short, she was testifying about what she was thinking when she went to the police with her concerns.

Second, this testimony did not prejudice Defendant under Rule 403. Not only did Defendant vigorously question Ms. Dawn's credibility on cross-examination by asking her about her prior convictions and by getting her to concede that "someone might conclude that [she has] a hard time telling the truth," id. at 198, but also abundant independent evidence was presented from which a jury could reasonably conclude that Defendant was guilty of the charge beyond a reasonable doubt. For these reasons, we hold that the admission of Ms. Dawn's testimony that she thought Defendant was selling drugs again was not an abuse of discretion.

### III. Sufficiency of the Evidence

Defendant also argues that the evidence was insufficient to sustain his conviction because it did not show that he knowingly possessed crack cocaine. Our examination of this claim requires us to review the record de novo and inquire whether, after viewing the evidence and the reasonable inferences

therefrom in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt. See United States v. Voss, 82 F.3d 1521, 1524-25 (10th Cir. 1996). In making this determination, we do not "second-guess the jury's credibility determinations, nor do we reassess the jury's conclusions about the weight of the evidence presented." United States v. Johnson, 57 F.3d 968, 971 (10th Cir. 1995).

To sustain a conviction for possession with intent to distribute, the government must prove that the defendant (1) possessed a controlled substance, (2) knew he possessed a controlled substance, and (3) intended to distribute the controlled substance. See United States v. Mains, 33 F.3d 1222, 1228 (10th Cir. 1994). At trial, Defendant argued that he did not know the Sonic Styrofoam cup contained crack cocaine. He repeats that argument on appeal, asserting that "[s]trong evidence . . . that [he] did not know of the contents [of the cup] . . . should [have] easily dissipated the prosecution's circumstantial evidence of actual knowledge." Appellant's Br. at 34.

After reviewing the record, we think the following combination of evidence is sufficient for a reasonable jury to conclude that Defendant knew he possessed crack cocaine. The glove box of the vehicle Defendant was driving contained approximately $2,470.00 in cash, and Officer Homman testified at trial that the money was packaged in a manner consistent with drug activity. Although

Defendant admittedly denied owning the money during the encounter on March 11, 1996, and when he was arrested on November 26, 1996, Officer Marshall testified that Defendant now claims that the money is rightfully his. Indeed, Defendant presented evidence that he had earned some money working in prison and at a candy shop since his release from prison. A jury could reasonably infer guilty knowledge from the evidence pertaining to the money and from Defendant's change in his story about the money. While Defendant argues that the exculpatory evidence showing that he had a legitimate source for the money undermines the circumstantial evidence of his knowledge, "[t]he fact that . . . evidence may also be consistent with a hypothesis of innocence . . . does not require reversal where there is sufficient evidence to support a guilty inference as well." Johnson, 57 F.3d at 972 (citing United States v. Hooks, 780 F.2d 1526, 1530 (10th Cir. 1986)).

Additional evidence supports an inference that Defendant knew he possessed crack cocaine. Testimony at trial demonstrates that Defendant arrived at the Midas shop with the Sonic Styrofoam cup in which the crack cocaine was later discovered. The manager testified that Defendant handed the cup to him and asked him to throw it away, and Captain Homman testified that he saw Defendant hand the Sonic cup to the manager. The record shows that the manager retrieved the same cup from the trash can the next day and that no one other than Defendant

and the manager were seen with the Sonic cup. Captain Homman also testified that people commonly carried crack cocaine concealed by ice in insulated mugs or cups. The jury could reasonably infer from this combination of evidence that Defendant knew the cup contained crack cocaine.

Finally, Mr. Rodriguez testified that neither the money nor the cocaine base belonged to him. He also testified that Defendant had called him from jail to encourage him to claim that the crack cocaine was his because he is a juvenile and would receive a lesser sentence. Although Defendant presented evidence that the cocaine was Mr. Rodriguez's, that Mr. Rodriguez had given the cup to the manager, and that Defendant had called Mr. Rodriguez to encourage him to go to a lawyer and truthfully admit that it was his crack cocaine and not Defendant's, we will not review the jury's credibility determinations. The jury was free to believe the testimony of the officers, the manager, and Mr. Rodriguez instead of the testimony which supported Defendant's claim of innocence.

Based on the totality of the evidence, we hold that the circumstantial evidence was sufficient for the jury to reasonably infer that Defendant knowingly possessed the crack cocaine and, as a result, to find him guilty beyond a reasonable doubt.

## IV.  Prosecutorial Misconduct

Defendant contends that his conviction should be reversed because the Government improperly attempted to impeach defense witness Ms. Krista Young without a good faith basis for believing she had committed prior bad acts.  In response, the Government argues that it did not act in bad faith, and in any event, any error is harmless because the court sustained Defendant's objection to questions about the witness' prior criminal history.[3]

We review evidentiary rulings for an abuse of discretion, see Cartier v. Jackson, 59 F.3d 1046, 1049 (10th Cir. 1995), and we review allegations of prosecutorial misconduct de novo.  See United States v. Gabaldon, 91 F.3d 91, 94 (10th Cir. 1996).  In reviewing claims of prosecutorial misconduct, we first determine whether the conduct was improper.  See United States v. Lonedog, 929 F.2d 568, 572 (10th Cir. 1991).  "If the conduct was improper, we must then determine whether it warrants reversal.  Prosecutorial misconduct does not warrant reversal if it was harmless error."  Id. (citation omitted).

At trial, the Government cross-examined Ms. Young by asking her whether she had "had some run-ins with law enforcement."  R., Vol. 6 at 418.  After Ms.

---

[3]To support its argument, the Government filed a motion to supplement the record with a copy of the witness' prior criminal convictions which were provided to the defendant during discovery.  Because the record supplies us with sufficient information to determine whether prosecutorial misconduct occurred, we deny the Government's motion to supplement the record.

Young responded, "Yes, I have," id., the Government asked what those run-ins involved. At this point, Defendant's counsel objected and a discussion ensued at the bench out of the hearing of the jury. It is apparent from this colloquy that both parties had documentation showing that Ms. Young had recently been convicted of theft and possessed convictions for shoplifting, simple battery, and criminal damage to property. See id. at 421-22. The prosecutor explained to the court that this information gave him a good faith basis on which to impeach the witness with a crime of dishonesty (theft) under Rule 609(a)(2) and felony convictions under Rule 609(a)(1). However, because the Government could not affirmatively say that either the theft conviction or the various other convictions were felonies, the court sustained the objection.

Applying the analysis set forth in Lonedog and having reviewed the transcript of Ms. Young's testimony and the court's discussion with both parties' counsel on the admissibility of prior crimes to impeach the witness, we conclude that the Government did not engage in "prosecutorial malfeasance." Appellant's Br. at 36. Contrary to Defendant's argument, the mere fact that the court sustained Defendant's objection does not mean that the Government acted in bad faith when it asked the witness whether she had experienced any run-ins with the law. With respect to the attempt to impeach the witness with a crime of dishonesty under Rule 609(a)(2), we think the prosecutor possessed sufficient

proof of a theft conviction which provided a good faith basis for inquiring whether the witness had had any run-ins with the law. Additionally, although the basis for impeachment under Rule 609(a)(1) is a closer question because the Government did not know conclusively whether her prior convictions were felonies, we conclude that the record shows, at the very least, that the basis was not "speculation and innuendo," United States v. Ruiz-Castro, 92 F.3d at 1519, 1529 (10th Cir. 1996); the Government had some evidentiary foundation for its initial question. As a result, we hold that the Government's conduct was not improper.

Moreover, even if we concluded that the prosecutor's limited questioning was improper under Rule 609(a)(1), such conduct would not warrant reversal in this case. Under Rule 609(a)(1), the court is vested with discretion to admit qualifying prior felonies if their probative value outweighs their prejudicial effect. Because this is a discretionary decision, the alleged error concerning such evidence is not a constitutional error. Cf. Lonedog, 929 F.2d at 573 n.2. The prosecutor's conduct in this case does not justify reversal because it did not have "a 'substantial influence' on the outcome or leave[] [us] in 'grave doubt' as to whether it had such effect.'" Id. at 573 (citation omitted). The witness never answered the question about the substance of her run-ins with the law, and the court prevented any evidence of prior crimes from reaching the jury's ears by

-27-

sustaining Defendant's objection. Further, although the court refused to admonish the jury to disregard Ms. Young's three-word statement admitting to run-ins with the law, this refusal neither was an abuse of discretion nor did it prejudice Defendant. Defendant's claim that the alleged error substantially impacted the outcome of the trial by improperly attacking the heart of his defense is negated by the fact that the testimony of four other defense witnesses was similar in substance to the exculpatory content of Ms. Young's testimony. It follows that, under the second prong of Lonedog, any error which might have occurred was harmless.

## V. Cumulative Error

In this case, we have assessed one definite evidentiary error and one potential evidentiary error, each of which we concluded was harmless. Because we have applied the harmless error analysis to these errors, we examine "whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Rivera, 900 F.2d 1462, 1470 (10th Cir. 1990) (en banc). We hold that the aggregate effect of the two errors does not justify reversal of Defendant's conviction because it does not appreciably impact the trial.

## VI. Sentence Enhancement

Defendant asserts that the district court improperly enhanced his sentence pursuant to 21 U.S.C. § 851. The Government sought to obtain an enhanced sentence based on Defendant's prior felony conviction for possession of cocaine in Kansas in 1993. After the district court rejected Defendant's claim that the informations filed by the Government pursuant to 21 U.S.C. § 851(a)(1) were defective, Defendant challenged the use of the prior conviction under § 851(c)(2). In that effort, he claimed that he had received ineffective assistance of counsel in his prior state case. Relying on detailed factual findings, the court determined that Defendant's counsel in the state trial was not ineffective.

On appeal, Defendant urges us to hold that the prior conviction relied upon for the enhancement was constitutionally defective because it was tainted by ineffective assistance of counsel and resulted from an unconstitutional search and seizure. The Government claims that Custis v. United States, 511 U.S. 485, 496 (1994), precludes a collateral attack on a prior conviction on any basis other than the right to counsel. In the alternative, the Government contends that the district court's factual findings were not clearly erroneous and that the court properly concluded that Defendant's counsel in the prior case was not ineffective. We review de novo the legality of Defendant's sentence. See United States v. Lopez-Gutierrez, 83 F.3d 1235, 1246 (10th Cir. 1994).

Pursuant to 21 U.S.C. § 851(c)(2), a defendant may challenge a prior conviction used to enhance his sentence in a later offense if he can show by a preponderance of the evidence that the prior conviction was obtained in violation of the Constitution. Only convictions which occurred less than five years before the date of the information alleging the prior conviction to enhance the sentence may be challenged. See 21 U.S.C. § 851(e). Because the statute explicitly provides for a right of collateral attack, Custis does not preclude Defendant's argument on appeal. See Custis, 511 U.S. at 490-92 (noting distinction between drug enhancement statute, 21 U.S.C. § 851(c), which specifically allows challenges to prior convictions relied upon for enhancement, and Armed Career Criminal Act, 18 U.S.C. § 924(e), which provides no statutory right to challenge prior convictions relied upon for enhancement).

Having reviewed the record, including the transcript of the hearing concerning the validity of the prior conviction, see R., Vol. 9, and the court's Memorandum and Order denying Defendant's objection to the enhancement, see id., Vol. 1 at Doc. 94, we conclude that the court properly enhanced Defendant's sentence based on the 1993 conviction. With respect to the ineffective assistance of counsel claim, Defendant has failed to show that his counsel's representation fell below an objective standard of reasonableness. See Lasiter v. Thomas, 89 F.3d 699, 703 (10th Cir. 1996) (citing Strickland v. Washington, 466 U.S. 668,

687 (1984), requirement that ineffective assistance claim must show deficient performance and resulting prejudice). Defendant alleged that his counsel was ineffective because he failed to: (1) file a motion to suppress; (2) interview pertinent witnesses or call them to testify; (3) request certain instructions defining nonexclusive possession; and (4) file an appeal. We briefly address each claim.

First, Defendant's counsel in the prior case testified that he decided that there was no viable basis on which to file a motion to suppress evidence obtained from the search warrant. See R., Vol. 9 at 23, 31. There is no basis in the record to conclude that this decision was unreasonable. Moreover, an "'attorney's decision not to file all motions requested by his clients [is] not ineffective assistance of counsel. Effective assistance does not demand that every possible motion be filed, but only those having a solid foundation.'" United States v. Afflerbach, 754 F.2d 866, 870 (10th Cir. 1985) (quoting United States v. Crouthers, 669 F.2d 635, 643 (10th Cir. 1982)).

Second, counsel testified that he attempted to interview people identified by Defendant as potential exculpatory witnesses but that, save one, they all refused to talk to him or had been indicted for other crimes. See R., Vol. 9 at 21, 28. Counsel fulfilled his obligations to his client by attempting to contact these potential witnesses; their refusal to testify has no bearing on counsel's effectiveness.

Third, Defendant's counsel testified that he believed his defense theory that Defendant was an innocent bystander was well-developed in the case by his cross-examination of the state's witnesses, the defendant's testimony at trial, and another defense witness' testimony. He further stated that he believed the instructions on the elements of the crime of possession were consistent with Kansas law and with the defense theory, see id. at 26, 38-41, and we agree with his assessment. Counsel's testimony at the sentencing hearing indicated that he had been fully prepared at the state trial and had understood the legal and factual issues in the case. The record thus does not support a conclusion that Defendant's counsel unreasonably failed to request an instruction on nonexclusive possession.

Fourth, Defendant's counsel testified that he informed Defendant of his right to appeal and he believed the court had informed Defendant of his right to appeal, but Defendant never requested that his counsel file a notice of appeal. See id. at 23-25. Counsel also testified that he advised Defendant that he did not think an appeal would be successful or that there were any legitimate appealable legal issues, but he would have filed a notice of appeal had Defendant so requested. See id. at 47-48. Although counsel admitted that he did not again notify Defendant of his right to appeal after the court denied a motion to modify the sentence, see id. at 44-45, he did not fail to advise Defendant of his right to

appeal in the first instance.

Accordingly, we hold that counsel's representation of Defendant in the prior state trial did not violate the Constitution. Because we conclude that the representation of Defendant in the prior offense was not deficient, we need not examine whether it prejudiced Defendant.

We turn to Defendant's argument that his 1993 conviction was based on a constitutionally invalid search and seizure. The record reveals that Defendant did not specifically raise this argument to the district court before his sentence was imposed. As a result, he did not develop a sufficient record on this point and he has waived the argument on appeal. See 21 U.S.C. § 851(c)(2); Walker v. Mather (In re Walker), 959 F.2d 894, 896 (10th Cir. 1992).

In light of our conclusion, the court's use of the 1993 conviction to enhance Defendant's sentence was not erroneous.

Our resolution of Defendant's various allegations of error requires that we AFFIRM his conviction and sentence.

Entered for the Court

Monroe G. McKay
Circuit Judge